GREENSTONE LAW APC
Mark S. Greenstone (SBN 199606)
Benjamin N. Donahue
(*pro hac vice* forthcoming)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9156
Facsimile: (310) 201-9160
Email: mgreenstone@greenstonelaw.com

GLANCY PRONGAY & MURRAY LLP
Marc L. Godino (SBN 182689)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: mgodino@glancylaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDAN BURGOS, BRIAN DANIELS, and JOSE TEJADA, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| AMERICAN HONDA MOTOR COMPANY, INC., a California corporation, | <u>DEMAND FOR JURY TRIAL</u> |
| Defendant. | |

# I. __INTRODUCTION__

1.     Plaintiffs Jordan Burgos, Brian Daniels, and Jose Tejada ("Plaintiffs") bring this action individually and on behalf of all similarly situated persons in the United States ("Class Members") who purchased or leased a 2022-2023 Honda Civic ("Class Vehicles") that were designed, manufactured, distributed, marketed, sold, and leased by Defendant American Honda Motor Company, Inc. ("Defendant" or "Honda"). Plaintiffs allege as follows upon personal knowledge as to themselves and their experiences, and as to all other matters, upon information and belief, including investigation conducted by their attorneys.

2.     In the 1980s, power steering became standard equipment on almost all vehicles sold in the United States. Traditional power steering systems are driven by hydraulic motors that assist the driver in changing the direction of a vehicle's front wheels by boosting the force initiated by the driver through the steering column and to the rack-and-pinion steering system.

3.     Over time, power steering systems have become more complex. Although early systems applied the same force regardless of vehicle speed, modern power steering technology applies greater force at low speeds—when more steering boost is needed relative to driver input—and less force at higher speeds. In recent years, automotive manufacturers have replaced hydraulic power steering motors with purely electric power steering ("EPS") systems. In theory, using EPS systems allows for greater control and modulation in steering assist because the electronic motors provide greater variability and a finer level of steering assist output. EPS systems are also easily integrated into autonomous vehicle control and safety systems.

4.     Honda produced the first commercially-available EPS system in its 1991 Acura NSX, a low-volume high performance sports car. By 1999, however, Honda began implementing EPS technology in mass production vehicles as the technology became less expensive and more widely available.

5. Beginning in 2016, if not before, Honda knew that many of its vehicles equipped with EPS steering systems, including the Honda Civic, suffered from one or more defects that can cause the Class Vehicles to lose maneuverability unexpectedly ("Steering Defect").

6. The Steering Defect has been documented to occur without warning under various driving conditions causing the Class Vehicles to lose steering control and maneuverability at high speeds. The extreme safety risk posed by the Steering Defect was described by one vehicle owner to the National Highway Traffic Safety Administration ("NHTSA") as follows:[1]

> Our 2022 Civic Touring started exhibiting weird steering behavior about 3000 miles in. With higher speeds, the steering "sticks" and requires slight, but manual force to free it. Usually, the stickiness happens and the car veers slightly to the left, I have to pull right to free the steering wheel again. This is dangerous as it can invite over compensation when correcting the locked steering, at best creates a jerky movement when correcting, at worst, over correction can cause accidents. Honda is not acknowledging this issue.

NHTSA ID Number: 11492258 Incident Date September 5, 2022.

7. Plaintiffs are informed and believe, and based thereon allege, that despite the obvious safety risks posed by the Steering Defect and notice of the defect's existence from, among other things, reported defects and malfunctions in other Honda vehicles that use the same or similar EPS systems to those in the Class Vehicles, pre-production testing, numerous consumer complaints, warranty data, and dealership repair orders, Defendant has not recalled the Class Vehicles to repair the Defect, has not offered its customers a suitable repair or replacement free of charge, and has not offered to reimburse all Class Vehicle owners and leaseholders the costs they have incurred relating to diagnosing and repairing the Steering Defect.

---

[1] Spelling and grammatical errors in consumer complaints reproduced herein remain as found in the original.

8.     The Class Vehicles come with a "bumper to bumper" New Vehicle Limited Warranty of 3 years/36,000 miles, whichever comes first ("NVLW").

## II.     PARTIES

### A.     Plaintiffs

**Jordan Burgos (Virginia)**

9.     Plaintiff Jordan Burgos is a resident of King George, Virginia. In about November 2021, Mr. Burgos purchased a new 2022 Honda Civic from Hendrick Honda Woodbridge in Woodbridge, Virginia. Prior to purchase, Mr. Burgos spoke with the dealer sales representative about the vehicle, inspected the Monroney sticker posted by Honda on the side of the vehicle and test drove the vehicle. Mr. Burgos was never informed by the dealer sales representative that his vehicle suffered from the Steering Defect and relied upon this fact in purchasing his vehicle. Had Mr. Burgos been informed that his vehicle suffered from the Steering Defect, he would not have purchased it. Mr. Burgos purchased his vehicle for personal, family or household purposes. Mr. Burgos's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Honda.

10.     Mr. Burgos began to experience the Steering Defect approximately seven months after purchasing his vehicle. For example, one day while driving on the highway Mr. Burgos steering wheel got stuck in place, causing him to almost hit another vehicle. Mr. Burgos has experienced the Steering Defect on numerous occasions since the highway incident. In about August 2022 within the coverage period of his NVLW, Mr. Burgos presented his vehicle to Hendrick Honda Woodbridge and complained of the steering problems he was experiencing. The dealership balanced his tires and performed an alignment, but made no repairs to the steering system. Mr. Burgos' vehicle continues to exhibit the Steering Defect.

11.     At all times, Mr. Burgos has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Brian Daniels (Maryland)**

12.     Plaintiff Brian Daniels resides in Rosedale, Maryland.  In about February 2022, Mr. Daniels leased a new 2022 Honda Civic from Anderson Honda in Cockeysville, Maryland.  Prior to purchase, Mr. Daniels spoke with the dealer sales representative about the vehicle, inspected the Monroney sticker posted by Honda on the side of the vehicle and test drove the vehicle.  Mr. Daniels was never informed by the dealer sales representative that his vehicle suffered from the Steering Defect and relied upon this fact in purchasing his vehicle.  Had Mr. Daniels been informed that his vehicle suffered from the Steering Defect, he would not have purchased it.  Mr. Daniels purchased his vehicle for personal, family or household purposes.  Mr. Daniels' vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Honda.

13.     Mr. Daniels began to experience the Steering Defect approximately six months after purchase.  On multiple occasions while driving his vehicle straight, Mr. Daniels' steering wheel has become stuck such that it cannot be turned unless jerked with more force than is typically necessary to steer.  This delays turning, can result in overcorrection causing the vehicle to swerve in an unintended manner, and impacts maneuverability.

14.     At all times, Mr. Daniels has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Jose Tejada (Texas)**

15.     Plaintiff Jose Tejada resides in Richmond, Texas.  In about October 2021, Mr. Tejada purchased a new 2022 Honda Civic from Gillman Honda Fort Bend in Rosenburg, Texas.  Prior to purchase, Mr. Tejada spoke with the dealer sales representative about the vehicle, inspected the Monroney sticker posted by Honda on the side of the vehicle and test drove the vehicle.  Mr. Tejada was never informed by the dealer sales representative that his vehicle suffered from the Steering Defect and relied upon this fact in purchasing his vehicle.  Had Mr. Tejada been informed that

his vehicle suffered from the Steering Defect, he would not have purchased it. Mr. Tejada purchased his vehicle for personal, family or household purposes. Mr. Tejada's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Honda.

16. In about the fall of 2022, Mr. Tejada's vehicle began to exhibit the Steering Defect. When Mr. Tejada drives straight on the highway, his steering wheel tends to get stuck and becomes very difficult to turn. Mr. Tejada is afraid this will cause an accident due to the impact on maneuverability. In about January 2021 within the coverage period of the NVLW, Mr. Tejada brought his vehicle to Gillman Honda Fort Bend and complained of the problems he was experiencing but was not offered any repair or servicing to correct the issue. Mr. Tejada continues to experience the Steering Defect.

17. At all times, Mr. Tejada has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**B.    Defendant**

18. Defendant, American Honda Motor Company, Inc. is a California corporation with its principal place of business located at 1919 Torrance Blvd., Torrance, Ca 90501 and doing business in California and throughout the United States.

19. Defendant is responsible for the design, manufacture, distribution, marketing, sale and lease of the Class Vehicles.

20. Whenever, in this Complaint, reference is made to any act, deed or conduct of Defendant, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the Defendant.

**III.    JURISDICTION**

21. This is a class action.

22.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interest and costs. There are more than 100 Class Members.  At least one Class Member is a citizen of a different state that the Defendant.

23.     This Court has personal jurisdiction over Defendant because it is a California corporation headquartered in Torrance, California, has sufficient minimum contacts with California, and otherwise intentionally avails itself of the markets within California, through the promotion, sale, marketing and distribution of its vehicles, so as to render the exercise of jurisdiction by this Court proper and consistent with traditional notions of fair play and substantial justice.

**IV.   VENUE**

24.     Venue is proper in this District because substantial part of the acts and omissions alleged herein took place in this District, Defendant is headquartered in this District, and the Class Vehicles were and are regularly advertised, marketed, sold/leased and serviced in this District through Defendant's network of dealers.

**V.    FACTUAL ALLEGATIONS**

25.     For years, Honda has designed, manufactured, distributed, sold, and leased vehicles equipped with EPS systems.  Modern Honda EPS systems are variable ratio, meaning that the amount of steering wheel rotation necessary to turn a Honda vehicle's front wheels changes based on the vehicle's speed and other factors.

26.     Since at least 2016, Honda Civic, Accord, CR-V, and other models equipped with similar variable EPS systems have malfunctioned at a high rate with symptoms identical to those that manifest in the Class Vehicles because of the Steering Defect.

27.     Plaintiffs are informed and believe, and based thereon allege, that Honda was aware of the Steering Defect prior to manufacturing, marketing, and selling the

Class Vehicles because earlier Honda Civic and other Honda models experienced an identical and wide-spread malfunction of their EPS systems.

28.     Honda was aware that EPS systems, similar to the one in the Class Vehicles, in prior Honda Civic, Honda Accord, and Honda CR-V vehicles were malfunctioning and posed a safety hazard.  Honda recalled certain Accord, CR-V, and Civic models due to EPS malfunctions and faced an enormous number of consumer complaints detailing the safety risk created by these vehicles' malfunctioning EPS systems.  For example, the following NHTSA complaints were made regarding the 2016-2021 Civic:

**NHTSA ID Number: 11010039 Incident Date July 4, 2017**

MY STEERING WHEEL STICKS. WHEN I AM DRIVING STRAIGHT WHILE MAINTIANING A STRAIGHT PATH YOU HAVE TO MAKE STEERING ADJUSTMENTS. IT STICK AND THEN CAUSES ME TO OVER COMPENSATE. WHEN DRIVING AROUND A CURVE I CAN LET GO OF THE STEERING WHEEL AND IT HOLD THE CURVE AND DOESN'T ROLL BACK TOT HE CENTER POSITION LIKE IT SHOULD. I HAVE TAKEN IT TO THE DEALERSHIP AND THEY CANT RECREATE IT SO NOTHING GETS FIX. IT HAPPENS ABOUT 40 PERCENT OF THE TIME. IT HAPPENS WHILE IN MOTION. MY CAR IS STILL UNDER WARRANTY

**Incident Date September 2, 2017 NHTSA ID Number: 11024179**

STEERING WHEEL STICKS WHILE DRIVING. WHEN I ADJUST THE WHEEL TO MAINTAIN A STRAIGHT PATH OR TAKING A CURVE, THE WHEEL STICKS CAUSING ME TO USE MORE FORCE THAN USUAL TO TURN THE WHEEL. BY USING MORE FORCE TO BREAK THE 'WHEEL STICK', THE CAR TENDS TO OVER COMPENSATE. YOU ARE FORCED TO ALWAYS HAVE BOTH HANDS ON THE WHEEL AND IT MAKES THIS CAR A VERY UNENJOYABLE AND UNSAFE EXPERIENCE TO DRIVE. BROUGHT THE CAR TO A DEALERSHIP, THEY TOLD ME THEY COULD NOT RECREATE IT. WILL BRING THE CAR TO A DIFFERENT DEALERSHIP, IF THEY CANNOT RESOLVE THE ISSUE, WILL TRADE CAR IN IMMEDIATELY (CAR HAS LESS THAN 10K MILES ON IT). I WILL NOT CONTINUE TO HAVE MY FAMILY DRIVE IN THIS CAR IF PROBLEM CANNOT BE RESOLVED.

**Incident Date February 19, 2018 NHTSA ID Number: 11073532**

STEERING WHEEL STICKS WHILE DRIVING, CAUSING OVER COMPENSATION, HAS CAUSED ME TO RUN OFF THE ROAD; DRIVING STRAIGHT, 60MPH, INTERSTATE CAR FAILS TO START AFTER DRIVING MORE THAN AN HOUR AND A HALF AT HIGHWAY SPEEDS, BEENCTO DEALER FOR BOTH OF THESE ISSUES AND HAVE HAD NO RESOLUTION.

**Incident Date June 14, 2018 NHTSA ID Number: 11104808**

I NOTICED THAT THE STEERING WHEEL WOULD START BEING STICKY AT HIGHWAY SPEEDS. . THE POWER STEERING WORKED FINE BUT FOR SUBTLE MOVEMENTS, IT WOULD CAUSE RESISTANCE. THIS WAS MOST FREQUENT WHEN DRIVING OVER AN HOUR AT HIGHWAY SPEEDS.INTERMITTENTLY WILL NOTICE THAT THE WHEEL TENDS TO STICK AFTER IT'S BEEN STRAIGHT FOR A COUPLE SECONDS AND I NEED TO APPLY MORE FORCE TO MAKE A SMALL ADJUSTMENT ON THE HIGHWAY. I DO NOT HAVE THE LKAS. IT SEEMS TO BE AN ISSUE WITH THE ELECTRONIC POWER STEERING.

**Incident Date August 18, 2018 NHTSA ID Number: 11132057**

THE STEERING STICKS WHEN DRIVING. WHEN DRIVING, EVEN JUST ON A STRAIGHT PATH, YOU HAVE MAKE STEERING ADJUSTMENTS TO KEEP THE CAR IN THE LANE. THE STEERING WILL STICK AND WHEN IT "BREAKS LOOSE,", THE CAR OVERCOMPENSATES AND JERKS. THIS MAKES IT DIFFICULT TO KEEP THE CAR IN THE LANE AND ON THE ROAD. ESPECIALLY WHEN DRIVING ON AN INTERSTATE REQUIRING HIGHER RATES OF SPEED. VEHICLE HAS BEEN TO THE DEALERSHIP TWICE. HOWEVER, TECHNICIANS WERE UNABLE TO "REPLICATE" THE PROBLEM. I MADE THEM AWARE OF SIMILAR COMPLAINTS WITH THE STEERING AND WAS TOLD HONDA WILL NOT ALLOW REPLACEMENT OF THE STEERING RACK WITHOUT REPLICATION OF THE ISSUE FIRST. THE VEHICLE IS UNSAFE. SOMETHING NEEDS TO BE DONE TO ADDRESS THIS ISSUE!

**Incident Date July 31, 2017 NHTSA ID Number: 11152111**

STEERING WHEEL STICKS WHEN TRYING TO MAKE SMALL ADJUSTMENTS. MUST APPLY ADDED PRESSURE TO GET PAST THE STICK. HAPPENS INTERMITTENTLY, ESPECIALLY WHEN DRIVEN FOR

LONGER TIMES AND WHEN THE WEATHER IS HOT. TAKEN TO DEALER SEVERAL TIMES BUT TOLD THEY CANNOT DUPLICATE PROBLEM.

**Incident Date February 15, 2019 NHTSA ID Number: 11180380**

TL* THE CONTACT OWNS A 2016 HONDA CIVIC. WHILE DRIVING 65 MPH, THE STEERING WHEEL FAILED AND THE CONTACT HAD TO USE FORCE TO STEER THE VEHICLE. THE VEHICLE WAS DRIVEN TO THE CONTACT'S HOME. THE CONTACT SCHEDULED AN APPOINTMENT WITH PENSACOLA HONDA (6675 PENSACOLA BLVD, PENSACOLA, FL 32505). THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS NOTIFIED. THE FAILURE MILEAGE WAS 47,510.

**NHTSA ID Number: 11180704 Incident Date January 19, 2019**

I'M GLAD I FOUND THIS THREAD I HAVE A 2016 HONDA CIVIC EX-T. AFTER I'VE BEEN DRIVING 10 OR 15 MINUTES, MOSTLY ON A HIGHWAY, SUDDENLY THE CAR BEGINS TO VEER SLIGHTLY ONE WAY OR ANOTHER. WHEN I GO TO CORRECT, THE STEERING WHEEL RESISTS. IT "STICKS"
 UNTIL I APPLY A BIT MORE PRESSURE, AFTER WHICH IT SUDDENLY RELEASES, CORRECTS, AND ACTS NORMAL. MOMENTS LATER HOWEVER, IT VEERS THE OPPOSITE DIRECTION, AND I AM FORCED TO REPEAT THE SAME PROCESS ALL OVER AGAIN. END RESULT IS I BEGIN DRIFTING SLIGHTLY BACK AND FORTH DOWN THE HIGHWAY REPEATEDLY, WHILE FIGHTING WITH A STEERING WHEEL. I FEEL IT IS A MAJOR SAFETY ISSUE, BECAUSE GOING DOWN A 3-LANE INTERSTATE, AND I'M IN THE MIDDLE LANE WITH 2 SEMI TRUCKS ON EITHER SIDE OF ME, THE CAR STARTS VEERING, I GO TO CORRECT AND THE STEERING "STICKS", CAUSING ME TO OVER CORRECT, THERE'S PROBABLY GOING TO BE AN ACCIDENT. I'VE BEEN READING A HONDA CIVIC FORUM, THERE ARE SEVERAL PEOPLE WITH THE SAME PROBLEM AND COMPANY KNOWS ABOUT THE PROBLEM. THEY REPLACE THE POWER STEERING ASSEMBLY (PART NUMBER: 53650-TBC-A21 OR 53650-TBA-A22).

**Incident Date January 19, 2019 NHTSA ID Number: 11174933**

WHILE DRIVING AT HIGHWAY SPEEDS OVER 65MPH, THE STEERING GETS "STICKY" THE DRIVER HAS TO APPLY EXTRA FORCE TO MOVE THE STEERING WHEEL WHILE DIVING STRAIGHT. THE MINOR STEERING

CORRECTIONS THAT WE USE TO KEEP A CAR CENTERED IN A LANE NOW BECOME SOMETHING THAT REQUIRES TWO HANDS BECAUSE ONCE YOU "BREAK" THE STEERING WHEEL FREE, THE CAR OVER-CORRECTS AND YOU NEED BOTH HANDS TO KEEP THE CAR IN THE LANE YOU ARE DRIVING IN. THE FORCE REQUIRED ISN'T A LOT, BUT ENOUGH TO MAKE A LONG ROAD TRIP UNDOABLE.

**Incident Date February 28, 2019 NHTSA ID Number: 11196995**

THE STEERING STICKS AT HIGHWAY SPEEDS CAUSING THE DRIVER TO OVERCOMPENSATE AND MAKING IT IMPOSSIBLE TO STAY WITHIN THE LANES. ALSO THE STEERING WHEEL DOES NOT GO BACK TO CENTER.

**Incident Date March 16, 2019 NHTSA ID Number: 11192708**

THE STEERING STARTED 'STICKING' IN PLACE AT INTERSTATE SPEEDS. WHEN DRIVING IT FEELS LIKE THERE'S A CATCH IN THE STEERING WHEEL WHEN YOU TRY TO MAINTAIN A LANE AND YOU HAVE TO TURN THE WHEEL TO THE RIGHT AND THEN LEFT TO STAY IN A LANE. YOU HAVE TO FORCEFULLY OVERCOME THIS STICKING RESISTANCE WHICH CAUSES THE CAR TO VEER TOWARD THE OTHER LANE AND THIS PROCESS IS CONTINUALLY REPEATED AS YOU DRIVE. IT IS A HUGE SAFETY ISSUE BECAUSE IT SEEMS TO WANT TO PUSH ME INTO ONCOMING TRAFFIC ON 2 LANE ROADS. SURPRISED THERE IS NO RECALL BECAUSE I SEE MANY OF THE SAME COMPLAINTS ON NHTSB AND IN ONLINE HONDA FORUMS, THE COMMON RESOLUTION SEEMS TO BE REPLACEMENT OF FACTORY DEFECTIVE EPS HARDWARE.

**Incident Date March 26, 2019 NHTSA ID Number: 11191592**

AFTER DRIVING FOR APPROXIMATELY 30 MINUTES, STEERING BECOMES ERRATIC. WHEEL TAKES FORCE TO TURN INITIALLY, CAUSING OVER-CORRECTION WHEN TRYING TO DRIVE STRAIGHT. THIS PROBLEM IS CONSISTENTLY REPRODUCIBLE. CAR IS WITH DEALER NOW TO FIX.

**Incident Date March 24, 2019 NHTSA ID Number: 11191192**

WHEN DRIVING ON HIGHWAY TODAY AROUND 60 MPH IT FELT LIKE THE STEERING WAS STICKING ON ME. WHEN I WOULD TRY TO CORRECT MY STEERING LEFT OR RIGHT IT WOULD FEEL STUCK FOR A SECOND

THEN IT WOULD GO. SEEMS VERY DANGEROUS AND NEEDS TO BE A RECALL ON THIS.

**Incident Date May 25, 2019 NHTSA ID Number: 11209977**

WHILE DRIVING STRAIGHT ON THE FREEWAY THE STEERING STICKS WHILE MAKING SMALL CORRECTIONS TO KEEP THE CAR STRAIGHT IN THE LANE. ITS A CATCHY FEELING CAUSING ME TO OVERCOMPENSATE AFTER IT CATCHES/STICKS. ALSO WHEN SITTING STILL WAITING FOR A STOP LIGHT THE STEERING SEEMS TO JUMP A NOTCH BY ITSELF.

**Incident Date July 2, 2018 NHTSA ID Number: 11244251**

THE STEERING WHEEL STICKS AT SPEEDS OVER 45MPH AFTER THE CAR HAS BEEN RUNNING FOR ABOUT 45 MINUTES.

**Incident Date May 31, 2020 NHTSA ID Number: 11331436**

I BOUGHT A 2017 HONDA CIVIC BACK IN DEC OF 2016 AND CURRENTLY, HAVE ABOUT 15,00 MILES ON MY CAR. THE PROBLEM STARTED A FEW MONTHS AGO WHEN I NOTICED THAT THE STEERING WHEEL WOULD START BEING STICKY, STIFF AND JERKY. THE STEERING WHEEL WOULD PULL TO THE RIGHT AND HAVE THIS SUBTLE MOVEMENTS, IT WOULD CAUSE RESISTANCE. THIS WAS NOT FREQUENT BUT THE PROBLEM WOULD SHOW UP OCCASIONALLY. I HAVE REPORTED THE ISSUE TO 3 DIFFERENT HONDA DEALERSHIPS WITH NO SOLUTION. I HAVE HAD 2 ALIGNMENTS ON MY CAR BUT THAT DID NOT RESOLVE THE PROBLEM EITHER. THE STICK/JERK PULL WOULD START AT ABOUT 30/40 MILES INTO MY DRIVE AND TURNING LEFT OR RIGHT WOULD CAUSE ME TO PULL THE STEERING WHEEL IN THE OPPOSITE DIRECTION. READING CIVIC FORMS, MANY ARE SAYING CIVIC HAS THE EPS RACK SO THAT'S CAUSING THIS JERKY PULL. *TR

**Incident Date March 16, 2021 NHTSA ID Number: 11406947**

STEERING FEELS LIKE IT STICKS WHILE CAR IS IN MOTION ON STRAIGHT HIGHWAY OR FAST CITY STREET, REQUIRING EXTRA FORCE TO CORRECT STEERING, RESULTING IN DANGEROUS OVERCORRECTIONS. NOT NOTICEABLE WHEN NAVIGATING A CURVE OR CORNER.

CLASS ACTION COMPLAINT

**Incident Date November 2, 2021 NHTSA ID Number: 11440137**

STEERING WHEEL LOCKED WHILE DRIVING VEHICLE AND WAS UNABLE TO TURN WHEEL. DEALER CONFIRMED STEERING FAILURE CAUSED BY FAULTY ELECTRONIC POWER STEERING MOTOR. DEALER CORRECTED ISSUE BY REPLACING THE ELECTRONIC POWER STEERING RACK.

**Incident Date July 1, 2021 NHTSA ID Number: 11423386**

WHEN DRIVING ON HIGHWAYS THE STEERING HAS A CATCH/ JERK WHEN MAKING ANY TRACKING MOVEMENT. IT CAUSES A JERK MOVEMENT ANYTIME YOU TRY TO EVEN SLIGHTLY CHANGE YOUR POSITION IN YOUR LANE. NO WARNING LIGHTS ARE SHOWING.

**Incident Date March 12, 2022 NHTSA ID Number: 11460747**

I BELIEVE THE ISSUE I'M ABOUT TO EXPLAIN IS WITH THE EPS RACK ASSEMBLY. I AM DEEPLY CONCERNED FOR MY SAFETY AND THE SAFETY OF OTHER RIDING IN MY VEHICLE AS IT IS DIFFICULT SOMETIMES TO KEEP THE VEHICLE ON THE ROAD DUE TO THE STEERING STICKING AT RANDOM TIMES. MANY OTHER 2016+ HONDA CIVIC OWNERS ARE EXPERIENCING THIS PROBLEM AS THERE ARE SEVERAL FORUMS CURRENTLY VIEWED ON THE INTERNET DISCUSSING THIS ISSUE. WHEN DRIVING THE VEHICLE, THE STEERING WHEEL "STICKS" IN ONE SPOT WHEN TURNING AND SOMETIMES TAKES A CONSIDERABLE FORCE TO BREAK THE STEERING WHEEL FREE. THIS ISSUE SEEMS TO HAPPEN AFTER THE CAR/ENGINE IS WARM (20-30 MINUTES INTO DRIVING). THIS PROBLEM STARTED OUT AS MINOR AND SPORADIC, BUT HAS BECOME MUCH WORSE IN THE PAST MONTH OR SO. I WILL BE MAKING AN APPOINTMENT WITH MY LOCAL HONDA DEALER FOR EVALUATION.

**Incident Date November 11, 2022 NHTSA ID Number: 11493452**

STEERING WHEEL LOCKED UP AND COULD NOT STEER. VEHICLE HIT A GUARD RAIL.

**Incident Date January 11, 2023 NHTSA ID Number: 11501363**

STEERING IS STICKY AT HIGHWAY SPEEDS WHILE MAKING MINOR ADJUSTMENTS TO STAY IN THE LANE. I SEE MULTIPLE OTHER REPORTS ONLINE AND WITH THE NHTSA ABOUT THIS WITH 2016-2018 CIVICS. IT HAPPENS MOSTLY ON WARMER DAYS AFTER DRIVING A FEW MILES. IT CAUSES OVERCOMPENSATION WHEN MAKING ADJUSTMENTS LEFT OR RIGHT IN THE LANE, WHICH COULD CAUSE THE CAR TO COME OUT OF THE LANE INTO ANOTHER LANE. I DO NOT FEEL SAFE DRIVING MY CAR ON LONG TRIPS ANYMORE. HONDA THINKS IT IS THE ELECTRIC POWER STEERING RACK, AND IT WILL COST OVER $3000 TO REPLACE! PLEASE INVESTIGATE THIS AND ALL THE OTHER REPORTS OF THIS! IT IS VERY UNSAFE! MAKE HONDA DO A RECALL ON THIS PLEASE! LOOK AT ALL THE OTHER REPORTS ON IT!

**Incident Date October 19, 2022 NHTSA ID Number: 11490076**

I'M HAVING A PROBLEM WITH MY STEERING. THE STEERING HAS A STICKY AND JERKY FEELING WHEN DRIVING, CAUSING ME TO HAVE TO OVERCORRECT LEFT OR RIGHT WHEN MAKING SLIGHT ADJUSTMENTS TO CENTER. IT IS EVEN WORSE AND MORE DIFFICULT TO MANAGE WHEN DRIVING ON THE HIGHWAY.

**Incident Date June 13, 2022 NHTSA ID Number: 11480483**

WHEN DRIVING THE STEERING CATCHES AND IS VERY HARD TO TURN CAUSING OVER CORRECTING AND A POTENTIAL SAFETY HAZARD. THE STEERING FEELS LIKE IT STICKS. THE PROBLEM HAS NOT BEEN INSPECTED YET - THE DEALERSHIP WANTS TO CHARGE OVER $100 JUST TO ASSESS. THERE ARE NO WARNING LAMPS ON IN THE VEHICLE. THERE ARE SEVERAL OTHER REPORTS OF THE SAME PROBLEM IN OTHER HONDA CIVICS. THIS NEEDS TO BE OPENED FOR POTENTIAL RECALL. IT COULD BE VERY DANGEROUS.

**Incident Date June 23, 2022 NHTSA ID Number: 11470797**

WHEN DRIVING AT HIGHWAY SPEEDS THE STEERING IS STIFF OR NOTCHY WHEN TRYING TO RETURN THE STEERING WHEEL TO CENTER. IT BINDS, THEN BREAKS FREE WHICH CAUSES THE STEERING WHEEL TO MOVE FURTHER THAN INTENDED AND THE CAR TO SWERVE. WE HAVE NOT BROUGHT IT TO THE DEALER FOR THIS PROBLEM YET BUT

PLAN TO IN THE COMING DAYS. IT SEEMS THIS IS A VERY COMMON ISSUE AND IN MY OPINION CREATES A DANGEROUS SITUATION AND COULD CAUSE AN ACCIDENT. THE NHTSA SITE ASKS FOR A SPECIFIC DATE BUT IT HAS BEEN HAPPENING REGULARLY FOR QUITE SOME TIME.

**Incident Date June 1, 2022 NHTSA ID Number: 11502282**

THE STEERING IS VERY STICKY. IT CATCHES MOSTLY TO THE LEFT AND WILL HOLD ITS POSITION TAKING YOU INTO OTHER LANE UNLESS YOU YANK IT BACK. IT STARTED ONLY AT HIGH SPEEDS NOW IT DOES IT ALL THE TIME. CAR SEEMS TO PULL TO LEFT IF YOU HAVE HAND ON WHEEL BUT GOES STRAIGHT IF YOU LET GO. IT WILL CATCH AND DART SHARPLY IN AND OUT OF LANES WITH THE SLIGHTEST MOVE. NOT ENJOYABLE DRIVING AT ALL.THERES BEEN NO WARNING LIGHTS OF ANY KIND. I GOT CAR AT 45000 MILES AND THIS STARTED AT 50000.DONT KNOW IF ITS RACK OR STEERING MOTOR BUT IT NEEDS TO BE RECALLED.CAUSES EXTREMLY ERATIC DRIVING.SO DAYS ITS ALMOST UNDRIVABLE.

29.     Honda had knowledge of these EPS malfunctions in prior Honda Civic models that were reported to NHTSA because it is required by federal law to maintain close contact with NHTSA regarding potential safety defects and monitor NHTSA databases for consumer complaints as part of Honda's ongoing obligation to uncover and report potential safety-related Defects.  The Steering Defect here—and the same EPS malfunction experienced in prior Civic models—is a safety-related defect because it increases the likelihood the driver will be involved in an accident when they lose control and are unable to maneuver.

30.     Upon information and belief, earlier Honda Civic models and the Class Vehicles' EPS systems are the same or similar in all material aspects.

31.     In addition to Honda's knowledge of the Steering Defect from its experience with similar EPS systems in prior models, its monitoring of complaints regarding EPS malfunctions in the Class Vehicles would have given it knowledge of the Steering Defect very soon after the Class Vehicles were released to the public. Unlike some automotive defects that manifest late in a vehicle's lifespan, the Steering

Defect typically reveals itself very early on. Many of the NHTSA complaints regarding the Class Vehicles, for example, are reported with less than ten thousand miles on a vehicle. Honda carefully monitors customer complaints during the early stages of a new vehicle release so that it can respond quickly, remedy safety issues, and facilitate warranty repairs to maintain customer goodwill. Given the number of complaints regarding the Steering Defect so early in the life of the Class Vehicles, Honda, upon information and belief, would have known about the Steering Defect and could have issued a stop sale of the Class Vehicles or implemented a countermeasure to avoid selling Plaintiffs and Class Members vehicles that contain a dangerous defect in their electronically controlled steering systems.

32. Examples of NHTSA complaints regarding the Class Vehicles include:

**Incident Date September 5, 2022 NHTSA ID Number: 11492258**

OUR 2022 CIVIC TOURING STARTED EXHIBITING WEIRD STEERING BEHAVIOR ABOUT 3000 MILES IN. WITH HIGHER SPEEDS, THE STEERING "STICKS" AND REQUIRES SLIGHT, BUT MANUAL FORCE TO FREE IT. USUALLY, THE STICKINESS HAPPENS AND THE CAR VEERS SLIGHTLY TO THE LEFT, I HAVE TO PULL RIGHT TO FREE THE STEERING WHEEL AGAIN. THIS IS DANGEROUS AS IT CAN INVITE OVER COMPENSATION WHEN CORRECTING THE LOCKED STEERING, AT BEST CREATES A JERKY MOVEMENT WHEN CORRECTING, AT WORST, OVER CORRECTION CAN CAUSE ACCIDENTS. HONDA IS NOT ACKNOWLEDGING THIS ISSUE.

**Incident Date November 18, 2022 NHTSA ID Number: 11494265**

NOTCHY OR STICKING OF STEERING WHEEL WHEN DRIVING AND LOW OR HIGHWAY SPEEDS. LESS THAN 8,000 MILES ON THE CAR AND STARTED WITHIN THE LAST 1,000 MILES. ISSUE IS PRESENT WITH AND WITHOUT DRIVING ASSIST FEATURED ENABLED/DISABLED.

**Incident Date November 1, 2022 NHTSA ID Number: 11494599**

THE ISSUES STARTED AROUND 3000 MILES. WHEN I TURN THE STEERING WHEEL TO STAY ON THE ROAD AROUND A SLIGHT CURVE,

IT WILL NOT NATURALLY RETURN TO THE CENTER AND I HAVE TO MANUALLY PULL IT BACK. IT MAKES IT FEEL LIKE THE CAR IS WANDERING AND IF IT GETS MUCH WORSE IT WILL BE UNSAFE. MY CAR NOW HAS 5500 MILES AND IS EXHIBITING A LIGHT "CATCH" OR STICKINESS WHEN MAKING SMALL ADJUSTMENTS (MOSTLY NOTICED ON THE HIGHWAY). MY DEALERSHIP IS USELESS AND RUDE AND SAYS THAT THEY WILL CHARGE ME A FEE IF THEY DO NOT FIND ANYTHING WRONG WITH THE CAR, EVEN THOUGH IT IS WELL UNDER WARRANTY. MY CONCERNS WERE CONFIRMED BY A MECHANIC SHOP IN MY AREA WHO ACKNOWLEDGED THE STEERING ODDITY.

**Incident Date September 10, 2022 NHTSA ID Number: 11494833**

SINCE I'VE OWNED THE CAR, WHEN DRIVING ABOVE 40 MPH(WHEN LKAS MAY ENGAGE), WITH LKAS OFF, THE STEERING BECOMES STATICALLY NEUTRAL. . . I. E IN A TURN THE STEERING WHEEL WILL REMAIN IN THE TURNED POSITION WHEN PRESSURE ON THE WHEEL IS REDUCED. IN THIS CASE THE STEERING WHEEL( AS WELL AS THE FRONT WHEELS THEMSELVES) SHOULD STRAIGHTEN OUT AS YOU CONTINUE TO MOVE. THIS IS DANGEROUS. ALSO, AT HIGHWAY SPEEDS, IN ORDER TO MAINTAIN THE CENTER OF YOUR LANE SMALL INPUTS TO THE STEERING WHEEL ARE NORMALLY REQUIRED. IN THIS VEHICLE, THERE IS RESISTANCE TO THESE SMALL INPUTS. WHEN THE FORCE OF YOUR INPUT FINALLY OVERCOMES THE RESISTANCE IN THE STEERING WHEEL THE WHEEL TURNS MORE DRAMATICALLY THAN INTENDED(OVERCORRECTION). THIS IS ALSO DANGEROUS. THIS ALSO OCCURS WITH LKAS OFF. IT'S ALMOST LIKE LKAS ENGAGES THE STEERING COLUMN PREEMPTIVELY ABOVE 40 MPH BUT IN A DANGEROUS MANNER. I HAVE LESS THAN 3000 MILES ON THE CAR.

**Incident Date December 13, 2022 NHTSA ID Number: 11497374**

STEERING BECAME DIFFICULT AND UNRESPONSIVE AT TIMES. CAR BARELY HAS 3000 MILES ON IT. TOOK TO HONDA DEALERSHIP FOR INSPECTION. THEY TEST DROVE CAR AND I WAS TOLD THE FOLLOWING NEEDED TO BE REPLACED AND RECOMMENDED LEAVING CAR THERE FOR REPAIRS. REPAIR RACK AND PINION ASSEMBLY, UPDATE CONTROL UNIT, UPDATE VSA AND EPS SYSTEMS, ALIGNMENT. 2 WEEKS TO GET A PART LEAVING ME STUCK HAVING TO PAY FOR A RENTAL CAR FOR WEEKS.

CLASS ACTION COMPLAINT

**Incident Date December 1, 2022 NHTSA ID Number: 11495940**

IMMACULATELY KEPT AND CARED FOR 2022 CIVIC WITH 8,000 MILES ON IT HAS "STICKY" AND/OR "BINDING" STEERING, WHICH CAME ON OUT OF NOWHERE A WEEK OR TWO AGO. THE PROBLEM IS MORE PRONOUNCED AT HIGHWAY SPEEDS, BUT IS STARTING TO BECOME NOTICEABLE AT RESIDENTIAL STREET SPEEDS (25-35MPH) TOO. I DO NOT FEEL SAFE DRIVING MY LESS THAN YEAR OLD CAR! BROUGHT IT TO THE DEALERSHIP YESTERDAY AND THEY ACTUALLY ACKNOWLEDGED THE PROBLEM AND RECOMMENDED "A WHOLE STEERING GEARBOX REPLACEMENT", WHICH IS UNDER WARRANTY, BUT THE PART HAS AT LEAST A MONTH LEAD TIME. UNACCEPTABLE! MOST DANGEROUS INCIDENT TOOK PLACE WHEN I WAS TURNING ONTO MY STREET AND IN MID-TURN THE STEERING WHEEL GOT STUCK MAKING ME HAVE TO APPLY MORE THAN NORMAL FORCE AND MAKING AN OVER CORRECTION. THANKFULLY, NOBODY WAS AROUND SO I DIDN'T HIT ANYONE, BUT IT COULD HAVE BEEN BAD IF THERE WAS A CAR IN THE OPPOSING LANE.

**Incident Date January 29, 2023 NHTSA ID Number: 11504287**

STEERING WHEEL BECOMES STIFF AFTER A FEW MINUTES OF DRIVING. IT FEELS STICKY AND IT IS HARD TO MAKE SMALL ADJUSTMENTS WHEN DRIVING IN A STRAIGHT LINE. PROBLEM IS NOTICEABLY WORSE AT HIGHER SPEEDS. THIS HAS BEEN HAPPENING FOR THE LAST TWO MONTHS. CAR HAS ONLY 9000 MILES.

**Incident Date January 8, 2023 NHTSA ID Number: 11504088**

1700 MILES IN THE ODO . STEERING FEELS AS IF IT GETS STUCK ON HIGH WAY SPEEDS . HAVING TO FORCE IT TO KEEP THE STEERING IN THE CENTER . DEFINITELY NOT NORMAL . STARTED NOTICING IT ABOUT 1500 ON THE ODO ONLY GETTING WORSE. ALMOST FEELS LIKE THE CAR IS NOT ALIGNED . PROPERLY . BRAND NEW CAR NOT STAYING STRAIGHT IS A CONCERN OF STEERING RACK ISSUES . COMMON FOR THIS CAR . SCARED TO REPORT IT TO DEALER THEY ARE ONLY GOING TO SUBMIT PAPERS AND SAY IS COMPLETELY NORMAL . WASTE OF TIME . THIS SHOULD BE A RECALL

**Incident Date November 1, 2022 NHTSA ID Number: 11502974**

STEERING WHEEL STICKING AFTER 2ND OIL CHANGE 9,000 MILES. ON THE HIGHWAY AND SPEEDS OVER 45MPH THE STEERING WHEEL WILL STICK AND REQUIRE FORCE TO MOVE IT FROM ITS POSITION. IT IS NOT SUBTLE AND SMOOTH LIKE EVERY CAR I'VE DRIVEN BEFORE. A RECALL IS I ORDER FOR THIS STEERING COLUMN. PLEASE LOOK AT ALL THE OTHER SIMILAR COMPLAINTS ON 2022 CIVICS.

**Incident Date January 14, 2023 NHTSA ID Number: 11501870**

THE STEERING SEEMS TO BE STICKING WELL DRIVING IN A STRAIGHT LINE, AND AS YOU PULL ON THE WHEEL, IT WILL SUDDENLY ALMOST FEEL LIKE IT'S CLICKING THEN MOVE. I HAVE SEEN MANY FORUMS ONLINE OF THE SAME COMPLAINTS AND HONDA IS DOING NOTHING ABOUT IT. THIS IS MY DAUGHTERS CAR AND I WANT IT TO BE SAFE. THAT'S WHY I BOUGHT A NEW ONE. I WAS DRIVING THE CAR LAST NIGHT AND IT'S SEEMS VERY DANGEROUS. THE CAR ONLY HAS 4600 MILES ON IT AND IT'S EXTREMELY NOTICEABLE.

**Incident Date January 9, 2023 NHTSA ID Number: 11500905**

VEHICLE HAS STICKY STEERING THAT IS NOTICBLE ABOVE 40 MPH AND GETS WORSE AS THE VEHICLE GOES FASTER. IT DOES TAKE CONSIDERABLE EFFORT TO STEER AT HIGHWAY SPEEDS AS THE RESISTANCE MAKES IT DIFFICULT TO NOT OVERCORRECT WHEN STEERING. WHEN LANE KEEP ASSIST IS ON IT CAN ALSO BE FELT THAT IT IS STRUGGLING WITH THE RESISTANCE IN THE STEERING. THIS STARTED AT AROUND 5000 MILES. THE DEALERSHIP STATES THAT IT IS THE STEERING RACK. THERE WAS NO WARNING LAMPS. THERE IS NO TECH SAFETY BULLETIN OR RECALL. THIS IS A KNOWN PROBLEM AND A POTENTIAL SAFETY ISSUE.

**Incident Date December 26, 2022 NHTSA ID Number: 11499897**

2022 CIVIC SPORT HAS CLOSE TO 2K MILES AND THE STEERING IS STICKY AND REQUIRES FORCE IN THE OPPOSITE DIRECTION TO "UNLOCK". THIS IS HAPPENING WITH OUR 2022 CIVIC TOURING AND NOW THIS NEW SPORT :(. IT IS A SAFETY ISSUE WHEN TRYING TO CORRECT THE STUCK STEERING WHEEL, IF OVER CORRECTED, CAN INADVERTENTLY DRIVE INTO ANOTHER LANE UNANNOUNCED. MANY

PEOPLE SEEM TO BE HAVING THIS ISSUE. NHTSA PLEASE HELP US! HONDA WON'T ACKNOWLEDGE THIS FAULTY, DANGEROUS ISSUE!!!

**Incident Date December 14, 2022 NHTSA ID Number: 11510243**

MY CAR HAS ABOUT 24K MILES ON IT AND AT ABOUT 20-22K I STARTED TO NOTICE SOMETHING WRONG WITH THE STEERING. I WAS ON AN OFF RAMP AT ABOUT 45 MPH AND ENCOUNTERED A STEERING OVERCORRECTION THAT I DIDN'T FEEL I CAUSED ON MY OWN WITHOUT ANOTHER FACTOR RELATED TO THE VEHICLE BEING PRESENT. SINCE THEN I HAVE BEEN PAYING MORE ATTENTION TO IT AND HAVE THE FOLLOWING TO REPORT. SO FAR I ONLY EXPERIENCE IT WHEN THE VEHICLE IS HOT OR WARMED UP AND IT FEELS LIKE THE STEERING WHEEL IS STICKING AND THEN WHEN YOU FINALLY GET IT TO BREAK FREE YOU END UP WITH A STEERING OVERCORRECTION OR LIKE A SWERVE THAT YOU DIDN'T INTEND TO CAUSE DUE TO YOUR NORMAL HUMAN DRIVING INPUTS. THERE IS DEFINITELY SOMETHING GOING ON HERE, MY CAR DID NOT DO THIS FOR THE FIRST 20K MILES AND NOW IT'S ESSENTIALLY EVERY TIME I DRIVE IT LONG ENOUGH TO GET WARMED UP. I HOPE THAT NHTSA IS ABLE TO HELP US OUT HERE.

33.     In addition to the knowledge of the Steering Defect that Honda would have gained from its experience with similar EPS malfunctions in prior Honda Civic models and from the NHTSA and other complaints made by Class Members immediately after the Class Vehicles' release, Honda would have learned about the Steering Defect during the pre-release process of designing, manufacturing, engineering, and testing the Class Vehicles which would have taken place prior to 2021.  During this process, Honda, directly and/or through its agents or affiliated companies in the supply chain, necessarily would have gained comprehensive and exclusive knowledge about the Class Vehicles' EPS systems' performance under various operating conditions; the basic engineering principles behind the EPS system's design; the forces and stresses the EPS systems would face; when and how the EPS systems would experience performance problems or fail; and, the cumulative and specific impacts on the EPS systems caused by wear and use, the passage of time, driver habits, and environmental factors.

34.     An adequate pre-release analysis of the design, manufacturing, engineering and testing of the EPS systems used for the Class Vehicles would have revealed to Honda that the Class Vehicles' EPS systems does not operate properly and is not fit for its intended use. Thus, during the pre-release design stage of the Class Vehicles, Honda would have known that the EPS systems in the Class Vehicles were defective and would pose a safety risk to owners/lessees and the motoring public.

35.     Notwithstanding its longstanding knowledge of the Steering Defect, Honda has actively concealed the Defect, failed to disclose the Defect to its customers prior to, or at the time of purchase of their vehicles, and failed to provide a remedy for the Defect to date.

36.     Customers have reported the Steering Defect in the Class Vehicles to Honda directly and through its dealers.  Defendant is fully aware of the Steering Defect contained in the Class Vehicles.  Nevertheless, Defendant actively concealed the existence and nature of the Defect from Plaintiffs and the other Class Members at the time of purchase or repair and thereafter.  Honda:

        a.    failed to disclose, at the time of purchase or repair and thereafter, any and all known material defects or material nonconformities of the Class Vehicles, including the Steering Defect;

        b.    failed to disclose, at the time of purchase or repair and thereafter, that the Class Vehicles and their EPS systems were not in good working order, were defective, and were not fit for their intended purpose; and

        c.    failed to disclose and actively concealed the fact that the Class Vehicles and their EPS systems were defective, despite the fact that Defendant learned of the Steering Defect before it placed the Class Vehicles in the stream of commerce.

37.     Defendant has deprived Class Members of the benefit of their bargain, exposed them all to a dangerous safety Defect, and caused them to expend money at

its dealerships or other third-party repair facilities and/or take other remedial measures related to the Steering Defect contained in the Class Vehicles. Moreover, on information and belief when vehicles are brought to Defendant's dealers for repair, Class Members are either turned away or provided with ineffective repairs—for example, a tire balancing or alignment—that do nothing to remedy the Steering Defect. As a result, Class Members continue to experience the Steering Defect notwithstanding their efforts to have their vehicles fixed, as shown by the experiences of Plaintiffs. Because many Class Members, like Plaintiffs, are current owners or lessees who rely on their vehicles on a daily basis, compensation for repairs, related expenses (e.g. towing) and diminution in value is not sufficient. A remedial scheme which also makes available a fix and/or warranty extension is necessary to make Class Members whole.

38. Defendant has not recalled the Class Vehicles to repair the Steering Defect, has not offered to its customers a suitable repair or replacement of parts related to the Steering Defect free of charge, and has not reimbursed all Class Vehicle owners and leaseholders who incurred costs for repairs related to the Steering Defect.

39. Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

40. As a result of the Steering Defect, the value of the Class Vehicles has diminished, including without limitation, the resale value of the Class Vehicles. Reasonable consumers, like Plaintiffs, expect and assume that a vehicle's EPS system and related components are not defective and will not malfunction while operating the vehicle as it is intended. Plaintiffs and Class Members further expect and assume that Honda will not sell or lease vehicles with known safety defects, such as the Steering Defect, and will fully disclose any such defect to consumers prior to purchase or offer a suitable repair or non-defective replacement.

## VI.  CLASS ACTION ALLEGATIONS

41.    Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Classes pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3).   This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of those provisions.

42.    The Class and Sub-Class are defined as:

> **Nationwide Class**: All persons who purchased or leased any Class Vehicle in the United States.

> **Maryland Subclass:** All persons who purchased or leased any Class Vehicle in Maryland.

> **Texas Subclass:** All persons who purchased or leased any Class Vehicle in Texas.

> **Virginia Subclass:** All persons who purchased or leased any Class Vehicle in Virginia.

43.    Excluded from the Class and Subclasses are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiffs reserve the right to amend the definition of the Class and Subclasses, and to add further subclasses, if discovery and further investigation reveal that the Class and Subclasses should be expanded or otherwise modified.

44.    Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the

Court. The Class Members are readily identifiable from, *inter alia*, information and records in Defendant's possession, custody, or control.

45. <u>Typicality</u>: The claims of the representative Plaintiffs are typical of the claims of the Class and Subclasses in that the representative Plaintiff, like all Class Members, paid for a Class Vehicle designed, manufactured, and distributed by Defendant which is subject to the Steering Defect. The representative Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct because, among other reasons, his vehicle has diminished in value as a result of the Steering Defect, their vehicles do not perform properly, and he has incurred or will incur the cost of repairing or replacing his malfunctioning Steering Defect and related parts as a result of the Steering Defect. Further, the factual bases of Defendant's misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and/or grossly negligent misconduct resulting in injury to all Class Members.

46. <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiffs and the Class and Subclasses that predominate over any question affecting only individual Class Members. These common legal and factual questions include the following:

        a.      whether the Class Vehicles suffer from the Steering Defect;

        b.      whether the Steering Defect constitutes an unreasonable safety hazard;

        c.      whether Defendant knows about the Steering Defect and, if so, how long Defendant has known of the Defect;

        d.      whether the defective nature of the Class Vehicles' steering systems constitutes a material fact;

        e.      whether Defendant had and has a duty to disclose the defective nature of the Class Vehicles' steering systems to Plaintiff and the other Class Members;

23

f.   whether Plaintiffs and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

g.   whether Defendant knew or reasonably should have known of the Steering Defect contained in the Class Vehicles before it sold or leased them to Class Members; and

h.   Whether Defendant: (1) violated consumer protection statutes of Maryland, Virginia, and Texas, (2) breached the implied warranties that apply to the Class Vehicles under Maryland, Texas, and Virginia law; (3) breached the express warranties that the apply to the Class Vehicles under Maryland, Virginia, and Texas law; (4) is liable for fraudulent omission; and (5) was unjustly enriched in selling the Class Vehicles.

47.   <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of the Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and automobile defect class actions, and Plaintiffs intend to prosecute this action vigorously.

48.   <u>Predominance and Superiority</u>: Plaintiffs and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or

1  piecemeal litigation in that class treatment will conserve the resources of the courts
2  and the litigants and will promote consistency and efficiency of adjudication.

3  **VII.    CAUSES OF ACTION**

4  **FIRST CAUSE OF ACTION**

5  **(Violation of the Maryland Consumer Protection Act, Md. Code Com. Law §§
6  13-101, et seq., on behalf of the Nationwide Class and, in the alternative, the
   Maryland Subclass)**

7      49.    Plaintiffs incorporate by reference the allegations contained in the
8  preceding paragraphs of this Complaint.

9      50.    Plaintiff Daniels brings this cause of action on behalf of himself and on
10 behalf of the proposed Nationwide Class or, in the alternative, the Maryland
11 Subclass.

12     51.    Honda is a "person" as that term is defined in Md. Code, Commercial
13 Law section 13-101(H).

14     52.    Plaintiff Daniels and Class Members are "consumers" as that term is
15 defined in Md. Code, Commercial Law section 13-101(C)(1).

16     53.    As described above, Honda sold vehicles to Plaintiff Daniels and Class
17 members even though the vehicles are defective and pose a safety hazard.  Honda
18 failed to disclose its knowledge of the Steering Defect and its attendant risks at the
19 point of sale or otherwise.

20     54.    Honda's deceptive acts and practices were willful and knowing because,
21 as alleged above, it knew about the Steering Defect before it began selling Class
22 Vehicles and chose not to disclose the problem to consumers.

23     55.    Despite its knowledge of the Steering Defect, Honda chose to conceal
24 information about the defect from Mr. Daniels and other consumers.  Honda had the
25 opportunity to disclose the Steering Defect to Mr. Daniels at the time of purchase in
26 February 2022.  Honda could have disclosed the Steering Defect alongside other
27 disclaimers during the purchase process, on the Monroney sticker, other through its

28

dealer sales representatives. Honda could also have disclosed the Steering Defect through its ubiquitous Internet, print, television and other media advertising.

56. This concealment was misleading and unfair in a material respect because the information concealed, if known, would impact the purchasing decision of a reasonable consumer. Had Mr. Daniels—or any consumer—been told that the Class Vehicles suffered from the Steering Defect, they would not have purchased a Class Vehicle or would have paid less for it.

57. Because Honda did not disclose the Steering Defect, however, Mr. Daniels has been deprived of the benefit of his bargain and harmed in that he now owns a defective and unsafe vehicle of diminished value compared to the non-defective vehicles they intended to purchase. The Class Vehicles' EPS systems are complex and expensive components that, on information and belief, cost in excess of thousands of dollars to replace. This is a cost that Plaintiffs and Class Members will have to bear as the price of continued ownership of a defective vehicle. The EPS steering system is a critical component that is material to the driver experience and safety.

58. Plaintiff Daniels and members of the proposed Maryland Class are entitled to damages and all incidental and consequential damages resulting from Honda's violations of the Maryland Consumer Protection Act.

## SECOND CAUSE OF ACTION

**(Violation of Virginia's Consumer Protection Act VA. Code Ann §§ 59.1-196, et. seq. ("VCPA") on behalf of the Nationwide Class and, in the alternative, the Virginia Subclass)**

59. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

60. Plaintiff Burgos brings this cause of action on behalf of himself and the Nationwide Class and, in the alternative, the Virginia Subclass.

61. Defendant is a "supplier(s)" under Va. Code Ann. § 59.1-198.

62. The sale of the Class Vehicles to Mr. Burgos was a "consumer transaction" within the meaning of Va. Code Ann. § 59.1-198.

63. By virtue of the acts and omissions described herein, Defendant violated the VCPA by misrepresenting that the Class Vehicles had certain quantities, characteristics, ingredients, uses, or benefits they do not have; misrepresenting that defective Class Vehicles were of a particular standard, quality, grade, style, or model when they were another; advertising the Class Vehicles with intent not to sell them as advertised; and otherwise using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction.

64. Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

65. Defendant knew that the Class Vehicles' steering systems suffered from an inherent safety defect, would fail prematurely and were not suitable for their intended use.

66. Defendant was under a duty to Plaintiff and Class Members to disclose the defective nature of the Class Vehicles' steering systems because:

    a.    Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' steering systems;

    b.    Defendant was aware that Plaintiff Burgos and Class Members were the intended end users of the Class Vehicles and expected to purchase vehicles containing functional and safe EPS steering systems

    c.    Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles' steering systems; and

d. Defendant actively concealed the defective nature of the Class Vehicles' steering systems from Plaintiff Burgos and Class Members at the time of sale and thereafter.

67. Honda had the opportunity to disclose the Steering Defect to Mr. Burgos at the time of purchase in November 2021. Honda could have disclosed the Steering Defect alongside other disclaimers during the purchase process, on the Monroney sticker, other through its dealer sales representatives. Honda could also disclosed the Steering Defect through its ubiquitous Internet, print, television and other media advertising.

68. By failing to disclose the Steering Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

69. The facts concealed or not disclosed by Defendant to Plaintiff Burgos and the other Class Members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease Defendant's Class Vehicles, or to pay less for them. Had Plaintiff Burgos and other Class Members known that the Class Vehicles suffered from the Steering Defect described herein, they would not have purchased or leased the Class Vehicles or would have paid less for them.

70. Plaintiff Burgos and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from the Steering Defect.

71. As a result of Defendants' misconduct, Plaintiff Burgos and the other Class Members have been harmed and have suffered and will continue actual damages in that the Class Vehicles are defective and require repairs or replacement and are diminished in value compared to the non-defective vehicles they intended to purchase. The Class Vehicles' EPS systems are complex and expensive components that, on information and belief, cost in excess of thousands of dollars to replace. This is a cost that Plaintiffs and Class Members will have to bear as the price of continued

ownership of a defective vehicle.  The EPS steering system is a critical component that is material to the driver experience and safety.

72. Pursuant to Va. Code Ann. § 59.1-204, Plaintiff Burgos seeks monetary relief against Defendant for its willful and knowing misconduct measured as the greater of (a) three times the actual damages or (b) $1,000.  Plaintiff Burgos further seeks an order enjoining the acts and practices described above, as well as punitive damages, and attorneys' fees and any other just and proper relief available under Va. Code Ann. § 59.1-204.

## THIRD CAUSE OF ACTION

**(Unjust Enrichment on behalf of the Nationwide Class or, in the alternative, the Maryland, Virginia, and Texas Subclasses)**

73. Plaintiffs re-allege the paragraphs above as if fully set forth herein.

74. Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class, and alternatively, the Maryland, Virginia, and Texas Subclasses.

75. As described above, Defendant sold the Class Vehicles to Plaintiffs and Class Members even though the vehicles suffered from the Steering Defect and posed a safety risk.  Defendant failed to disclose the Steering Defect at the point of sale or following the sale of the Class Vehicles.

76. As a direct and proximate result of Defendant's failure to disclose known a known defect, Defendant has profited through the sale and lease of the Class Vehicles.  Although these vehicles are purchased through Defendant's agents, the money from the vehicle sales flows directly back to Defendant.

77. As a result of its fraudulent acts and omissions related to the Steering Defect, Defendant charged Plaintiffs and Class Members more than it otherwise could have for Class Vehicles, obtaining monies which rightfully belong to Plaintiffs and Class Members.

78. Defendant has been unjustly enriched through the sale of the Class Vehicles which it brought to market knowing they suffered from the Steering Defect.

Defendant has obtained money from Plaintiffs' and Class Members, and earned interest on that money which have added to Defendant's profits, when that money should have remained with Plaintiffs and Class Members.

79. Defendant's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

## FOURTH CAUSE OF ACTION

**(Fraudulent Omission on behalf of the Nationwide Class or, in the alternative, the Maryland, Virginia and Texas Subclasses)**

80. Plaintiffs re-allege the paragraphs above as if fully set forth herein.

81. Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class, and alternatively, the Maryland, Virginia and Texas Subclasses.

82. Defendant knew that the Class Vehicles' steering systems were defectively designed and/or manufactured, would fail, and were not suitable for their intended use.

83. Defendant concealed from and failed to disclose to Plaintiffs and Class Members the defective nature of the Class Vehicles and their steering systems.

84. Defendant had the opportunity to disclose the Steering Defect to Plaintiffs and Class Members at the time of purchase. Defendant could have disclosed the Steering Defect alongside other disclaimers during the purchase process, on the Monroney sticker, other through its dealer sales representatives. Defendant could also have disclosed the Steering Defect through its ubiquitous Internet, print, television and other advertising.

85. Defendant was under a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles' steering systems because:

a. Defendant was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' steering systems;

b. Defendant were aware that Plaintiff sand Class Members were the intended end users of the Class Vehicles and expected to purchase vehicles containing functional and safe EPS steering systems;

c. Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their steering system has a dangerous safety defect until after they purchased the Class Vehicles;

d. Defendant knew that Plaintiffs and the Class Members could not reasonably have been expected to learn about or discover the Steering Defect; and

e. Defendant actively concealed the defective nature of the Class Vehicles' steering systems from Plaintiffs and Class Members at the time of sale and thereafter.

86. The facts concealed or not disclosed by Defendant to Plaintiffs and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendant's Class Vehicles or pay less for them. Had Plaintiffs and Class Members known about the defective nature of the Class Vehicles' steering systems, they would not have purchased or leased the Class Vehicles, or would have paid less for them.

87. Defendant concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles' steering systems in order to induce Plaintiffs and Class Members to act thereon. Plaintiffs and the other Class Members justifiably relied on Defendant's omissions to their detriment. This detriment is evident from Plaintiffs' and Class Members' purchase or lease of Defendants' defective Class Vehicles.

88. Defendant continued to conceal the defective nature of the Class Vehicles' steering systems even after Class Members began to report the problems.

Indeed, Defendant continues to cover up and conceal the true nature of the problem today.

89. As a direct and proximate result of Defendant's misconduct, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

## VIII. **RELIEF REQUESTED**

90. Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendant, and issue an order providing the following relief:

    a. That Defendant provide notice, in a form pre-approved by the counsel identified below, to all current owners or lessees of the Class Vehicles in the United States and in the said notice offer to replace the defective EPS system and any related component parts contained in every Class Vehicle with a non-defective EPS system and component parts;

    b. That Defendant provide notice, in a form pre-approved by the counsel identified below, to all current and subsequent owners and lessees of the Class Vehicles in the United States and in the said notice extend the warranty for all of the Class Vehicles' parts, components or systems that constitute the EPS system, or that bear upon or are impacted by the Steering Defect

    c. That Defendant offer to reimburse all current and former owners and lessees in the United States who have purchased or leased the Class Vehicles, all expenses already incurred as a result of the Steering Defect, including repairs, diagnostics, and any other consequential and incidental damages (*e.g.* towing charges, vehicle rentals, etc.);

    d. That Defendant immediately cease the sale and leasing of the Class Vehicles at all authorized Honda dealerships in the United

32

States without first notifying the purchasers of the Steering Defect, and otherwise immediately cease to engage in the violations of law as set forth above;

e. Damages and restitution in an amount to be proven at trial;

f. An order certifying the proposed Class and Sub-Class, designating Plaintiff as named representative of the Classes, and designating the undersigned as Class Counsel;

g. A declaration that Defendant is financially responsible for notifying all Class Members about the defective nature of the Class Vehicles' EPS system;

h. An award to Plaintiffs and the Classes of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

i. An award of attorneys' fees and costs;

j. A declaration that Defendant must disgorge, for the benefit of the Classes, all or part of the ill-gotten profits it received from the sale or lease of the Class Vehicles, and/or make full restitution to Plaintiffs and Class Members;

k. An award of pre-judgment and post-judgment interest, as provided by law;

l. Leave to amend the Complaint to conform to the evidence produced at trial; and

m. Such other relief as may be appropriate under the circumstances.

## **JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated: March 21, 2023

GREENSTONE LAW APC

By: *s/ Mark S. Greenstone*
Mark S. Greenstone
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9156
Facsimile: (310) 201-9160
Email: mgreenstone@greenstonelaw.com

GLANCY PRONGAY & MURRAY LLP
Marc L. Godino
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: mgodino@glancylaw.com

*Attorneys for Plaintiffs*